## CIRCUIT COURT OF THE CITY OF RICHMOND

Shirley A. Johnson

v.

Central Fidelity Bank et al.

v.

Commercial Services of Va., Inc.

November 30, 1988

Case No. LM-1096-4

By JUDGE RANDALL G. JOHNSON

This case is before the court on defendant Central Fidelity Bank's plea of the Workers' Compensation Act, Va. Code § 65.1-1 *et seq.* Plaintiff, an employee of Commercial Courier Express, Inc., was injured on April 21, 1987, when she slipped and fell on the Bank's premises, allegedly because of the bank's negligence in allowing a hazardous condition or substance to be present on its floor. The Bank argues that plaintiff was its statutory employee at the time of her injury and, as such, is barred by the Act from maintaining an action at law against the Bank for negligence. Because the court agrees that plaintiff was a statutory employee of the Bank, the Bank's plea will be sustained.[1]

---

[1] The Bank has filed a third-party motion for judgment against Commercial Services of Virginia, Incorporated (not Commercial Courier), a company under contract to strip and rewax the Bank's floors, the Bank claiming that whatever hazardous condition or substance caused plaintiff's injury resulted from the

Va. Code § 65.1-29 provides, in pertinent part, as follows:

> When any person (in this section . . . referred to as "owner") undertakes to perform or execute any work which is a part of his trade, business, or occupation and contracts with any other person (in this section . . . referred to as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any workman employed in the work any compensation under this Act which he would have been liable to pay if the workman had been immediately employed by him.

In this case, the "owner," Central Fidelity Bank, undertook to perform courier work and contracted with Commercial Courier, the "subcontractor," for the performance of that work. Thus, if such courier work was a part of the Bank's "trade, business or occupation," the plaintiff was the Bank's statutory employee and is barred from maintaining this action against the Bank. In this regard, the following facts are undisputed.

Central Fidelity Bank was formed in 1975 by the merger of two predecessor banks. From the time of its creation until April 1, 1986, approximately 75% of the Bank's 140 branches were served by couriers on the Bank's own payroll. These couriers transported bank documents to and from the various branches and the operations center, the Federal Reserve Bank, the post office, and other places where bank documents were picked up and delivered. The remaining 25% of the branches, in the western and southwestern part of Virginia, were served by an independent contract courier. In addition, for at least eight years prior to

negligence of Commercial Services. Plaintiff has also filed a claim against Commercial Services. Commercial Services, like the Bank, has filed a plea of the Workers' Compensation Act. That plea, however, has not been brought on for a hearing or briefed by the parties. Accordingly, the court does not rule on that plea at this time.

the merger, at least one of the predecessor banks also employed its own courier personnel.

On April 1, 1986, the Bank entered into a contract with Commercial Courier under which Commercial Courier agreed to perform all courier services for the Bank. As part of the contract, Commercial Courier offered employment to all of the Bank's courier employees, as well as to the employees of the existing contract courier who were servicing the Bank, and about 85% of the Bank's employees went with Commercial Courier. Although they were now employed by a different entity, the couriers' duties remained the same.[2] It is also undisputed that plaintiff was acting within the scope of her employment with Commercial Courier at the time of her injury. It is against this background that the decision of whether plaintiff was the Bank's statutory employee must be made.

In *Shell Oil Co. v. Leftwich*, 212 Va. 715, 187 S.E.2d 162 (1972), the Supreme Court of Virginia said the following with regard to whether particular work is a part of an employer's trade, business or occupation:

> [T]he test is not one of whether the subcontractor's activity is useful, necessary, or even absolutely indispensable to the statutory employer's business, since, after all, this could be said of practically any repair, construction or transportation service. The test (except in cases where the work is obviously a subcontracted fraction of a main contract) is whether this indispensable activity is, in that business, *normally* carried on through employees rather than independent contractors. 212 Va. at 722 (*quoting* Larson, *The Law of Workmen's Compensation*, Vol. 1A, § 49.12, at 872-73 (emphasis in original).

More recently, in *Carmody v. F. W. Woolworth Co.*, 234 Va. 198, 361 S.E.2d 128 (1987), the Court expanded the above test to hold that an owner may be a statutory employer even though the work being performed by the

---

[2] It does not appear that plaintiff was formerly employed by the Bank.

employee, in that case portrait photography, had *never* been performed by the owner:

> The appropriate inquiry is not whether Woolworth as owner was engaged in the portrait photography business or had ever been, *but whether [plaintiff's] sale of portrait photographs was a part of Woolworth's business of operating a department store.* Indeed, it may be inferred that Woolworth had no desire to engage directly in the business of taking and selling portrait photographs in any of its stores. But, as a discount department store selling a variety of goods and services, Woolworth saw a consumer demand for portrait photographs and, as a matter of commercial self-interest, elected to make it a part of its retail merchandising business, albeit a part conducted through an independent contractor. 234 Va. at 205 (emphasis added).

Thus, it is now clear that a statutory employer-employee relationship may exist not only where the work being performed is *normally* performed by the owner's employees, but also where such work is a part of the owner's *overall* business activity.

In the case at bar, the evidence is clear that courier service is an essential and integral part of Central Fidelity Bank's business. Such service is not merely useful or desirable; it is something without which the Bank simply could not operate. While such service after April 1, 1986, was no longer normally performed by Bank employees, it was nonetheless a part of the Bank's banking business. Under the holding of *Carmody*, then, plaintiff was the Bank's statutory employee.

In an attempt to void being classified as the Bank's statutory employee, plaintiff cites the case of *Bassett Furniture v. McReynolds*, 216 Va. 897, 224 S.E.2d 323 (1976). In *Bassett*, a furniture company contracted with an outside contractor to install a conveyor system at Bassett's manufacturing plant. The plaintiff worked for the outside contractor. The Court noted that while Bassett had performed construction work in the past, for the past few years, almost all of such work had been contracted out. Moreover,

since Bassett always contracted out large jobs and had never performed a job of the magnitude as that involved with the conveyor system, the Court held that the employee was not engaged in Bassett's trade, business, or occupation. This court believes that the facts of *Bassett* are distinguishable from the facts of the case at bar.

In *Bassett*, the employer was engaged in the manufacture of furniture. While a conveyor system is useful to that business, it is not a part of it; that is to say, furniture may be manufactured even in the absence of a conveyor system, albeit not as efficiently. Thus, not only was the construction of the conveyor system not the type of work normally performed by Bassett's employees, it was also not a part of the "furniture manufacturing business."

By contrast, the pickup and delivery of bank documents is unquestionably an inherent part of the "banking business." In today's world, it is essential that checks, deposit tickets, loan papers, and other items be transported quickly and efficiently between the branches and the operations center, between the operations center and the Federal Reserve, and between the operations center and other locations. This movement of bank documents is not something which is collateral or tangential to the operation of the Bank; it is an integral part of the operation itself. While a purchaser of furniture does not care whether the manufacturer does or does not have a conveyor system in its plant, a bank's customer has a right to expect that the transactions he makes with a local branch will move swiftly and efficiently through the banking system. In addition, federal and state banking laws require that checks and other banking papers be cleared within specified time periods, and a courier service is the means by which those requirements are met. Thus, while it is true that after April 1, 1986, Central Fidelity Bank's employees were no longer normally engaged in courier service, such service remained an integral part of the Bank's business.

Plaintiff also cites *Burroughs v. Walmont*, 210 Va. 98, 168 S.E.2d 107 (1969), and *Stevens v. Ford Motor Co.*, 226 Va. 415, 309 S.E.2d 319 (1983), to argue that mere deliverers of goods are not statutory employees of the person to whom such goods are delivered. In *Burroughs*, the plaintiff was an employee of a trucking company that delivered sheet rock to a job site. While making the de-

livery, the plaintiff was injured. In holding that the plaintiff was not the statutory employee of the general contractor, the Court stated:

> The gathering of material is, of course, essential to the construction of a building. So in a sense, each supplier of material is engaged in the general contractor's trade, business, or occupation. But a line must be drawn to determine who is an "other party" for the purposes of the Workmen's Compensation Act, and persons who function solely as suppliers and deliverers of goods have been held "other parties." 210 Va. at 99-100.[3]

Similarly, the Court in *Stevens v. Ford Motor Company* also held that the plaintiff, who was injured while unloading cargo at a Ford Motor Company facility, was not Ford's statutory employee. That decision, however, was based on the fact that the independent contractor which employed plaintiff had been hired by Ford to *deliver* cargo, not to unload it. Only Ford's employees were supposed to do that. Thus, although unloading cargo was unquestionably a part of Ford's trade, business, or occupation, plaintiff was not properly engaged in it. Accordingly, his civil action against Ford was not barred.

To the extent that "deliverymen" cases are applicable here, the appropriate case to consider is *Conlin v. Turner's Express, Inc.*, 229 Va. 557, 331 S.E.2d 453 (1985). In *Conlin*, the plaintiff was employed by Ford Motor Company, which had contracted with Turner's Express to haul Ford's machinery and parts between its plants. Plaintiff was injured while operating a forklift used to load such cargo onto Turner's Express' trailer. The Court held that plaintiff *was* the statutory employee of Turner's Express and was barred from bringing a lawsuit against it. Specifically, the Court stated:

---

[3] As used in the Workers' Compensation Act, the term "other party" refers to an entity causing an injury other than an actual or statutory employer. See Va. Code Section 65.1-41.

[T]ransporting machinery and parts from one plant to another was an essential element of Ford's business. Therefore, because Turner's Express was engaged in Ford's trade, business, or occupation, Turner's Express was not an "other party" whom [plaintiff] could sue. 229 Va. at 559.[4]

Moreover, the Court specifically distinguished that case from *Burroughs* and *Hipp v. Sadler Materials Corp.*, 211 Va. 710, 180 S.E.2d 501 (1971), a case factually similar to *Burroughs*, and in which a holding identical to the holding in *Burroughs* was made:

We held in both cases [*Hipp* and *Burroughs*] that one who merely delivers his materials is not engaged in the trade, business, or occupation of a builder and, therefore, is an "other party" subject to suit . . . .
In the present case, however, Turner's Express was not merely delivering merchandise to a job site but was transporting cargo between Ford's assembly plants, an essential part of Ford's business. Therefore, Turner's Express was not an "other party." 229 Va. at 560.

In the case at bar, as in *Conlin*, plaintiff was not merely delivering merchandise to a job site. Instead, she was transporting items between Central Fidelity's branches, operations center, the Federal Reserve, and other established locations. Because the court is convinced that the transportation of such items is at least as essential a part of the Bank's business here as the transportation of machinery and parts was to Ford's business in *Conlin*, it is the holding of this court that plaintiff was engaged in the trade, business, or occupation of the Bank at the time of her injury. Accordingly, this action must be dismissed as to the Bank.

---

[4] See note 3 supra.