## CIRCUIT COURT OF THE CITY OF RICHMOND

Gloria Roberts

v.

Sam Huggins
and Abacus Corp.

December 27, 1990

Case No. LS-731-3

By JUDGE T. J. MARKOW

This matter is before the court after taking evidence and hearing argument on defendant's Motion to Dismiss on the ground that the plaintiff's sole remedy lies under the Worker's Compensation Act.

Plaintiff, an employee of the Broad Street Thalhimer's department store, was injured while at work when she slipped on a wet floor. The floor was wet because it was being cleaned by defendant, Huggins, an employee of defendant Abacus which was under a contract with Thalhimer to perform its housekeeping services which included, among other things, the cleaning, sweeping, mopping, stripping and waxing of floors in the Thalhimer's store.

Thalhimer operates twenty-six retail stores. It contracts out housekeeping services in all but three of its stores. In those three stores, Thalhimer does all of the same work contracted out to defendant at the Broad Street store. Prior to contracting out housekeeping services at the Broad Street store, Thalhimer did all of its own housekeeping. Thalhimer has contracted out housekeeping services because it can be done more cheaply on a contract basis. At the Broad Street store, Thalhimer provides its

own housekeeping services in the food preparation areas of its three restaurants, as well as around sales and cash register areas, such as glass counter tops which are cleaned by clerks. Most of Abacus' cleaning work is done outside regular retail hours. Since the contract with Abacus, Thalhimer employees no longer do housekeeping, even where there are spills. Employees of Abacus are always on call for such work.

In its contract with defendant, Thalhimer requires a certain degree of training, retains the right to reject potential employees, and requires adherence to some of its personnel rules.

An owner such as Thalhimer is liable for the payment of worker's compensation to employees of a subcontractor, such as Abacus, if the subcontractor undertakes to perform or execute any work which is a part of Thalhimer's trade, business or occupation. Va. Code Ann. § 65.1-29. Because the owner is responsible, the subcontractor's employee's sole remedy against the owner is under the Worker's Compensation Act. Va. Code Ann. § 65.1-40. Likewise, employees of the owner are precluded from claims against "fellow employees," such as the subcontractor or its employees. The owner's employee may make claims for work-related injuries only if the perpetrator of the injury is an "other party." Va. Code Ann. § 65.1-41. In other words, the injured employee's sole remedy is under the Act if caused by the owner or anyone with whom the owner has subcontracted all or a part of its trade, business or occupation.

Plaintiff is free to assert her claim against Abacus or Huggins only if Huggins is found to be "any other party," i.e., a stranger to the "trade, business or occupation" of Thalhimers. If they are found to be undertaking the "trade, business or occupation" of Thalhimers, then Abacus and Huggins are the "statutory employees" of Thalhimer, and they are immune from claims by Thalhimer's employees.

The question then is whether Abacus and its employees were engaged in performing some part of the trade, business or occupation of Thalhimer.

The Supreme Court of Virginia has suggested two tests in answering the question of whether an employee of a subcontractor is undertaking the "trade, business or occupation" of the owner. First, in *Floyd v. Mitchell*, 203 Va. 269 (1962), and then in *Conlin v. Turner's Express*,

229 Va. 557 (1985), the court said that one must ask whether the activity was essential to the trade or business of the owner. Second, in *Shell Oil v. Leftwich*, 212 Va. 715 (1972), the question to be answered is whether the activity was "normally" performed by the employees of the owner.

While the issue here involves a different question, it must be remembered that the principles relied upon can ultimately lead to a finding or denial of worker's compensation coverage for an injured employee. For example, should the Abacus employee who was mopping the floor have injured his back while lifting his water bucket and Abacus was without worker's compensation coverage and in bankruptcy, could the employee collect Worker's Compensation benefits from Thalhimer (this is a so-called "right side up") case as contrasted with the current matter in which the owner's employee makes a claim against a subcontractor and its employee (which is referred to as an "upside down case")? If the answer to the question raised by the parties here is that plaintiff is barred because she was injured by a "fellow employee," then the Abacus employee could collect Worker's Compensation from Thalhimer; otherwise he could not. The point of this is that in construing the Worker's Compensation Act, it should be construed liberally in favor of coverage. *Henderson v. Central Telephone Co.*, 233 Va. 377 (1987). Even though coverage is not the issue here, the same principle of construing the Act liberally in favor of coverage must be applied in determining whether Abacus and its employees were the statutory employees of Thalhimer.

Plaintiff argues that the *Shell Oil v. Leftwich* test based on whether the task is "normally" performed by the owner's employees should be applied. This court's reading of *Shell* suggests that too much reliance is placed on the so-called "Shell test." *Shell*, a "right side up" case, involved an appeal from an award of Worker's Compensation benefits from Shell Oil to two employees of a service station operator whose only connection with Shell was that of a lessee and franchisee licensed to sell Shell products. Not only did the court find that Shell employees were not involved in sales to consumers as were the claimants, it found that Shell's business; *i.e.*, the sale of gasoline, was limited to dealer sales, that the claimant's

employer was an independent contractor, and that Shell operated no gas stations through its own employees.

It would seem that the issue in *Shell* could have been resolved simply by holding that § 65.1-30 of the Code does not apply to landlord/tenant franchisee/franchisor situations. There was no need to go further.

In *Shell*, the court quoted with approval a quotation from *Larson's Workmen's Compensation Law*, vol. 1A, § 49.12, pp. 872, 873, in which Professor Larson articulated the "normally done" test. But in Larson's updated work, he somewhat changes the concept stated in *Shell* of determining what is "normally done" by the owner's employees to what is ordinarily done by this employer in the past and what is done by employers in comparable businesses. A. Larson, *Workmen's Compensation Law*, vol. 1C, § 49.12, pp. 872, 873. What is "normally done" by the owner's employees is no longer suggested by Professor Larson as the proper test.

The "normally done" test can lead to unintended results inconsistent with a liberal application of the Act. As the Supreme Court of Virginia has pointed out, the "normally done" test, if applied uncritically, could result in employers avoiding compensation by subcontracting out all of their work. In that circumstance, the employer's workers would normally do nothing. *Henderson v. Central Telephone Co.*, 233 Va. 377 (1987).

Parenthetically, Larson also characterizes the case of *Wooten v. Youthcraft Manufacturing Co.*, 321 S.W.2d 1 (Mo. 1958), offered by plaintiff as persuasive authority as "remarkable" and "grotesquely illiberal if an affirmative grant of compensation were at stake . . . ." See A. Larson, *supra*, § 49.16(f), p. 974.

*Shell* has also been held inapplicable to a case where an employee of the general contractor seeks to sue the subcontractor (an "upside down" case). *Whalen v. Dean Steel Co.*, 229 Va. 164, 170 (1985); *Feitig v. Chalkley*, 185 Va. 96, 38 S.E.2d 73 (1946). This court does not find the Shell test applicable or helpful here.

Here the plaintiff was engaged in the work of a retail sales clerk for Thalhimer. Her function was essential to the store's operation. Similarly, the Abacus employee, Huggins, and Abacus functioned. They were responsible to maintain a clean place for Thalhimer to conduct its

business. Its work was not only indispensable to Thalhimer's business, it was an ordinary and routine part of the business, subcontracted out, not because it was beyond Thalhimer's capability, but because it was more economical and convenient. The cases which deal with the distinctions between construction and maintenance, as *Bassett Furniture v. McReynolds*, 216 Va. 897 (1976), are of no help here. The housekeeping is even more fundamental and routine to a retail business than would be maintenance, if maintenance is considered simple repair of defects. Housekeeping is always needed. Maintenance is by its nature sporadic. A floor needs constant cleaning but only occasional repair.

While this court has taken pains to distinguish the Shell test, even that test would produce the same result.

Thalhimer normally provided housekeeping in some of its stores and in the kitchens of its restaurants. Prior to its contract with Abacus, it provided these services at this store. It makes little sense to conclude that if ever the owner contracts away some or all of its normal work, the workers are taken outside of the Act. Were that the case, Va. Code Ann. § 65.1-29 would be meaningless. Yet, that would be the result if plaintiff's arguments were adopted. Housekeeping was a task normally done by Thalhimer's employees in some of its stores, in its restaurant kitchens, and regularly in this particular store before the Abacus contract.

Perhaps a more helpful test in these cases would be that found in Professor Larson's updated work in which he says "the test of applicability [of the Act] is the question whether the work being done under the contract *would ordinarily* be done by employees, in view of this employer's past practices and the practices of employers in comparable businesses." A. Larson, *The Law of Workmen's Compensation*, vol. 1C, § 49.00 (emphasis added).

Applied to this case, we have no evidence of other similar businesses, but Thalhimer does this work ordinarily in some stores, does it in restaurant kitchens, and has done it in the past.

Considering the facts, the law reviewed and mentioned here, this court is of the opinion that Huggins and Abacus were not strangers to the business of Thalhimer. They were not "other" parties responsible for plaintiff's injury.

Plaintiff's sole remedy is under the Worker's Compensation Act, and defendants' motion to dismiss will be sustained.