**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 06-2051**

───────────

WILLIAM G. MEREDITH,

                                    Plaintiff - Appellant,

        and

OAKLEY TANK LINES, INCORPORATED, as Subrogee
of William G. Meredith,

                                    Petitioner,


        versus



HONEYWELL INTERNATIONAL, INCORPORATED,

                                    Defendant - Appellee.

───────────

Appeal from the United States District Court for the Eastern
District of Virginia, at Richmond.  Henry E. Hudson, District
Judge.  (3:06-cv-00148-HEH)

───────────

Submitted:  August 6, 2007          Decided:  August 23, 2007

───────────

Before MOTZ and SHEDD, Circuit Judges, and WILKINS, Senior Circuit
Judge.

───────────

Affirmed by unpublished per curiam opinion.

───────────

David L. Epperly, Jr., EPPERLY & FOLLIS, P.C., Richmond, Virginia, for Appellant.  John D. Epps, Alexandra B. Cunningham, HUNTON & WILLIAMS LLP, Richmond, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

William G. Meredith appeals the district court's dismissal pursuant to Fed. R. Civ. P. 12(b)(1), of his personal injury tort action against Honeywell International, Inc. ("Honeywell"), on the ground that the action was barred by the exclusivity provision of the Virginia Workers' Compensation Act, Code § 65.2-100 et seq. (the "Act").[1]  The district court ruled that at the time of his injury, Meredith was a statutory employee of Honeywell and, therefore, his sole right and remedy was under the Act.  For the reasons set forth below, we affirm.

The material facts of this case are undisputed. Honeywell is in the business of manufacturing various products,

---

[1]Section 65.2-302(A) of the Act provides:

> When any person (referred to in this section as "owner") undertakes to perform or execute any work which is part of his trade, business or occupation and contracts with any other person (referred to in this section as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any worker employed in the work any compensation under this title which he would have been liable to pay if the worker had been immediately employed by him [thus rendering the worker a "statutory employee" of the owner].

The Act excludes all other rights and remedies of such employees, at common law or otherwise, on account of such injury.  See Va. Code Ann. § 65.2-307.

- 3 -

chemicals, and materials, including caprolactam[2] which is transported from Honeywell's Hopewell, Virginia plant to its Irmo, South Carolina plant. Honeywell contracted with Oakley Tank Services ("Oakley"), other independent companies, and had its own drivers hauling caprolactam between plants. Specifically, Honeywell contracted with Oakley to transport caprolactam from its Hopewell plant to its Irmo plant, and then to return to the Hopewell plant, occasionally carrying a load of "wash water" from which Hopewell would recover additional caprolactam. Both Honeywell drivers and contracted drivers followed the same procedures when loading caprolactam from the Honeywell plant. A driver parked his truck at a loading station, placed his keys in a lock box, and provided paperwork to a Honeywell control operator located in a control room. The driver could then wait in the control room while the control operator loaded the truck with caprolactam. Upon loading the truck and providing the driver with completed documentation, the control operator would unlock the lock box, allowing the driver to retrieve his keys and drive the truck out of the plant. Meredith was a truck driver employed by Oakley and, at the time of his accident, was working the run to transport caprolactam from the Honeywell Hopewell plant to its Irmo plant. Meredith followed the above-outlined procedure and, after

_____

[2]Caprolactam is a chemical intermediate used by Honeywell in the manufacture of nylon.

- 4 -

presenting his paperwork to the control operator, sat in a chair in the Hopewell plant control room which collapsed beneath him, resulting in his alleged injuries.

The sole issue on appeal is whether the district court erred in dismissing Meredith's case pursuant to Fed. R. Civ. P. 12(b)(1), based on its holding that Honeywell was Meredith's statutory employer. In support of his position, Meredith asserts that: (1) he was not engaged in Honeywell's trade, business, or occupation; (2) he was an independent contractor; and (3) Honeywell was not his statutory employer under the normal work test.

We find that the district court correctly held that Meredith's action was barred by the Act. It is undisputed that the transportation of the caprolactam between Honeywell's Hopewell and Irmo plants was an essential part of the work that Honeywell performed in the manufacture and processing of caprolactam. Meredith's job was to effect that transportation. At the time of his injury, his truck was being unloaded and prepared for the return trip, he had just presented required documentation to the control operator, and then attempted to sit in the chair located in the control room. The district court found that neither the act of sitting,[3] nor the fact that Meredith was not responsible for the

_____

[3]We note that it was an essential part of the entire process of hauling the material that the driver complete his paperwork and wait while his tanker truck was filled with caprolactam. While Meredith contends that he ceased being Honeywell's statutory
(continued...)

actual unloading of the product,[4] removed Meredith's activity from the trade, business, or occupation of Honeywell, and we agree. Moreover, as the district court held, the operative factual distinctions regarding the relationship between premises owner and contractor for purposes of the applicability of the Act are whether the transportation was intra-company, or between two separate companies, with the former properly being held to be part of the owner's trade, business or occupation,[5] and whether the product delivered was independently manufactured, with such products being

---

[3](...continued)
employee while his truck was being refilled from the time he presented his paperwork until the time he fell, he has offered no case law to support such a proposition. Indeed, the contention that Meredith ceased to be a statutory employee of Honeywell while he was awaiting the filling of his truck is as frivolous as would be a contention that he ceased being a statutory employee had he been injured while stopping to catch his breath on his way to submitting his paperwork, or during the time he was exiting his truck after pulling into the Hopewell facility. The law does not provide for such piecemeal differentiation, and we decline to impose it in this case.

[4]Citing <u>Conlin v. Turner's Express, Inc.</u>, 331 S.E.2d 453, 455 (Va. 1985) (whether driver assisted in the loading operation not relevant to the determination of whether the contractor was engaged in the manufacturer's trade, business, or occupation).

[5]<u>Conlin</u>, 331 S.E.2d at 455 (transportation of machinery and parts between two plants was an "essential element" of the business and thus the contractor's activities were part of the "trade, business or occupation" of the premises owner); <u>Bowling v. Wellmore Coal Corp.</u>, 114 F.3d 458, 461 (4th Cir. 1997) (transportation of product between owner's premises and its processing facility held to be "an essential and integral part of its business"); <u>Smith v. Horn</u>, 351 S.E.2d 14, 17 (Va. 1986) (transportation of product between owner's premises and its processing facility was part of the contractor's "trade, business or occupation").

- 6 -

held not to be within the defendant's trade, business or occupation.[6] Here, the transportation of caprolactam from Honeywell's Hopewell plant to its Irmo plant, where the chemical was processed and used to manufacture nylon, was an integral part of Honeywell's "trade, business or occupation" under the plain language of Va. Code § 65.2-302(A). Plus, Meredith was not merely delivering an independently manufactured product to a job site. Rather, he was transporting material manufactured by Honeywell between Honeywell's manufacturing plants, which was, as the district court held, an essential part of Honeywell's business.

Nor does the fact that Honeywell had a contract with Oakley the terms of which provided that Oakley was an independent contractor, that neither Oakley nor its employees would be considered Honeywell employees, and that Oakley would obtain workers' compensation insurance for its employees, alter the legal obligations of the respective parties under the Act. As properly

---

[6]The Virginia Supreme Court consistently has held that there is no statutory employer/employee relationship where the injured independent contractor was delivering a third-party's or the contractor's own materials to the job site. See, e.g., Rice v. VVP America, Inc., 137 F. Supp. 2d 658 (E.D. Va. 2001); Crocker v. Riverside Brick & Supply Co., 639 S.E.2d 214 (Va. 2007); Stevens v. Ford Motor Co., 309 S.E.2d 319 (Va. 1983); Burroughs v. Walmont, Inc., 168 S.E.2d 107 (Va. 1969); Buffalo Shook Co. v. Barksdale, 141 S.E.2d 738 (Va. 1965). See also Clean Sweep Prof'l Parking Lot Maint., Inc., 591 S.E.2d 79, 83 (Va. 2004) (truck driver employed by trucking company to deliver asphalt between defendant's asphalt plant and its worksite, injured at worksite, was engaged in essential part of defendant's work, distinguishing the case from those where trucking company was "merely delivering its own independently manufactured parts.").

noted by the district court, the Act explicitly provides that "no contract or agreement, written or implied, . . . shall in any manner operate to relieve any employer in whole or in part of any obligation created by this title." Va. Code Ann. § 65.2-300(A). Thus, the contract does not protect Honeywell from its obligations as a statutory employer under the Act, nor does it provide Meredith with a loophole through which he can circumvent the exclusivity provisions of the Act.

Finally, Meredith's assertion that Honeywell was not his statutory employer under the "normal work test" espoused by the Virginia Supreme Court in <u>Shell Oil Co. v. Leftwich</u>, 187 S.E.2d 162, 167 (Va. 1972), is likewise without merit. While Honeywell does not presently use its direct employees to transport caprolactam along the precise interstate route followed by Meredith, their drivers transport the same chemical, in the same manner, using the same procedures and equipment, for the same purpose, between the Hopewell plant and other Honeywell fiber plants in Virginia. We find no error in the district court's conclusion that there is no legal distinction between the fact that Meredith transported the caprolactam across state lines, and that the Honeywell drivers transported the substance within Virginia.

The facts of this case establish that Honeywell was Meredith's statutory employer, and accordingly, his sole remedy was under the Act. We therefore affirm the district court's dismissal

of Meredith's tort action against Honeywell for lack of subject matter jurisdiction.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED